This is Monsanto Company and DuPont and Pioneer Hybrid, 2013-13-49. Mr. Hunger, when you are ready. Thank you, Your Honor. May it please the Court. Mr. Hunger, just a preliminary question. One of my clerks pointed out to me, you have nothing shown in your statement related to cases, and she found a derivative action listed. Is that an oversight? It's in Monsanto's brief, and I don't recall the timing. Either it's an oversight, or I don't recall the timing of when that suit was brought. But yes, as referenced in Monsanto's brief, there is a shareholder action that is based in part, as I understand it, on the events relevant here. And it is pending? I believe that's correct, yes, Your Honor. The District Court committed reversible error in holding that legal arguments about the objective meaning of the license and subjective factual contentions supported by contemporaneous evidence could constitute fraud on the Court. Under Eighth Circuit precedence, fraud on the Court is an exceedingly narrow doctrine that can be satisfied only by the most egregious misconduct directed to the Court itself that prevents the opposing party from fairly presenting its case, conduct such as fabrication of evidence or bribery of a judge. But wasn't the contract clear on the point here, and wasn't it also clear that there is evidence that the DuPont people understood that they didn't have the right that they were looking for? 209 defines licensed field as solely. 301G says licensee shall not be entitled to use biological material which is licensed outside of the licensed field. Your Honor, as we explained in our opening brief with respect to the license itself, biological material is very precisely defined as the material that was supplied back in 1992, and it does not include replicates. The contract actually includes a separate provision about genes which are also referenced in other parts of 3.01G, and genes do include replicates. But biological material is only the material supplied, and as the Supreme Court said in Microsoft v. AT&T, what's supplied does not include copies made thereof. So it's clear that under the language... That wasn't a biological case, Microsoft v. AT&T. That was a computer software case. Yes, Your Honor, but it was interpreting the word supply. So certainly our interpretation is reasonable. Monsanto doesn't even respond to our argument on that in our brief. And again, Your Honor, the parties knew how to include replicates when they intended to do so. They defined the term gene to include replicates. They did not define the term biological materials to include replicates. So certainly the argument was reasonable, and with respect... But DuPont himself didn't think so. I just found out that Section 209 may be a problem, and that appears in a number of places here. Actually, that appears in only one place, and the place where it appears is on March 26th, at a time, Your Honor, when the draft agreement, contrary to the party's agreement in the letter of intent, contained an explicit ban on stacking, or rather, at least Monsanto's draft had included it, and they had not yet agreed to recede on that point. It is true, Your Honor, that that email Your Honor refers to on March 26th, was written by a scientist, a businessman, not a lawyer, was raising a question about that issue. However, the following day, Your Honor, on March 27th, Monsanto's lawyers finally receded and agreed they would drop the language proposing a ban on stacking. That's undisputed, and thereby going back to what the parties had originally agreed, the business people had agreed in the letter of intent was the deal. And, on March 27th, at 25802 of the joint appendix, the pioneer people, including Dr. M, I'll call him because of the protective order, who wrote that email the day before that Your Honor referred to, this is at 25802 of the joint appendix, the negotiator sent an email to Dr. M saying, Monsanto has agreed, they've okayed the glyphosate on glyphosate stack, as a selectable marker, and Dr. M responded, great news about the gap. This is at 25802 of the joint appendix. And so, at that point, after Monsanto's drafters had changed their position and had agreed to go back to the original terms of the letter of intent, the internal individuals at Pioneer that the judge relied on in supposedly not believing they had the right to stack, in fact, exchanged emails saying, we do have this right. But didn't they check with their lawyers and the lawyers said, no, sorry? Your Honor, no. First of all, Mr. C, who wrote that email on the 27th of March, was engaged in the negotiations. He was the lawyer advising the business person about what the deal was. And, on the next day, March 28th of 2002, at 2580828 and 25805 of the joint appendix, again, more back and forth, again, Mr. C is assuring the client that we have this right to stack glyphosate. On glyphosate, the only issue is whether they're going to get the right to stack non-glyphosate on glyphosate, which they ultimately did the following day. I think, Judge Lloyd, that your question was referring to discussions five years after the fact, where they were at a time when relations with Monsanto had, again, deteriorated. They were going back and looking at the license. That was March 02. I'm sorry? March 02. But I've gone through, Your Honor, with respect, and I think this is what Monsanto and the district judge confused. They skip around, and they skip important steps in the analysis, in the chronology, in an attempt to portray something that is contrary to fact. Counsel, assume that we find that misrepresentations were made to the court, and we find that those misrepresentations were used to wholly support the reformation of the agreement, arguments that you made to the court. Why do those not rise to the level of fraud on the court? Well, again, Your Honor, several reasons. First of all, obviously, we don't agree that misrepresentations were made. But the important thing, first of all, under Rule 11, which defines for litigants what it means when you make a representation. What Rule 11 says is if you make a legal argument, and some of these are legal arguments. Monsanto doesn't even attempt to defend the fraud on the court finding with respect to those. And I would note that Parts 3A and 3E of the court's decision, two of the five categories of alleged misrepresentations that the court found rest exclusively on objective legal argumentation about the meaning of the agreement, which can't possibly be fraud on the court. The court can't be deceived. All it has to do is look at the agreement and make its own interpretation. So those have to be reversed. Well, but that's an interplay of fact and law in those. Not on a question of contract interpretation, Your Honor. With respect, again, if you look at the representations cited in Parts 3A and 3E, they're purely legal argumentation about what the contract means. Those aren't assertions about what the parties intended. They're assertions as a factual matter. They're assertions about the language of the agreement. And those are under Rule 11. That's a legal argument. And the question is, is it non-frivolous? And we submit it is. But in any event, the judge didn't say it was frivolous. He said it was contrary to subjective belief. That's just not an issue under Rule 11. And with respect to the factual contentions, Your Honor, Again, what Rule 11 says is you have to have evidentiary support. And when you make a representation, what you are saying to the court is there is evidentiary support for this factual assertion. And I just went through with, in response to Judge Lurie's questions, the contemporaneous e-mails after March 26th show that they believed that they had this right. You're answering a question that doesn't sound like what Judge Rayna asked. He said, presume that we do find there are misrepresentations. Yes, Your Honor. But with respect, what I'm trying to argue with respect to Rule 11 is that even if a judge or a fact finder can conclude that the representation was in fact false, and that happens all the time in litigation. One party says X, the other party says Y, and the fact finder decides X is wrong, untrue, Y is right, and true. That happens all the time. But just because one party was wrong. We have the additional element, don't we, that these representations were used to prop up the reformation arguments that you were making or the accounts that you brought against Monsanto. You wanted to reform the agreements, and the misrepresentations assume that they wholly propped up those arguments for reformation that you were making. Then why is that not a fraud on the court? I guess I want to get to the tail end. Are we dealing with fraud on the court or something else or nothing at all? And I'm trying to get you to go to fraud on the court. So if I understand Your Honor's question, I think it is true that not every misrepresentation is a fraud on the court. I mean even this court on the 8th Circuit have made that clear. In the Pfizer case there were misrepresentations, but it wasn't fraud on the court. So it has to be particularly egregious. And again, if the evidence were unambiguous that there were multiple misrepresentations going to the heart of these issues, that would be a very different case. So it depends. And one of the things that depends on, Your Honor, is whether the evidence is absolutely clear or not. There's not a lot of law on this issue, but looking at the Nichols case, and when you see what Mr. Nichols did, he filed a class action suit, and he based the entire case on a hook that was manufactured by a manufacturer, when in fact it turned out that he was using a homemade hook. So his entire claim, his entire case, was based on a fabrication. I think that's what the district court said in this case, that the reformation arguments that you were making, you were seeking to reform the agreements, and DuPont carried this forward for over two years, and then it turns out that no, it's not a hook made by the manufacturer, it's a homemade hook. Yes, Your Honor, but one crucial difference is that it was undisputed in the Nichols case that in fact the whole case was a fabrication, a fraud, a perjury. It was undisputed. There was no contrary evidence. Here, it's far from undisputed. The question for a reformation claim is the party's understanding of their deal at the time prior to its signing. What deal did they think they had finally reached? Here you have document after document that says they have okayed glyphosate resistance as a marker. Good news about the gap. I assume we would not be blocked against using glyphosate resistance gene. Your assumption is right. Now we can use glyphosate and ALS on soy. That's at 25, again, 25.802, 25.828, and 25.805 are the records. So this is a far cry from Nichols because there was strong evidence in support of the accuracy of the representation. Isn't the court structuring it as a fraud on the court rather than, say, Rule 11 because of its concern of wasted judicial and litigant resources caused by the continuation of that case where we're working under Judge Raina's assumption that there are misrepresentations, that it continued for two years when it wouldn't have if those misrepresentations hadn't been made and the court treated it as, well, because you made a misrepresentation of me which caused me to allow you to go forward for those two years, the fraud was actually on the court rather than just on your opposing party. Well, Your Honor, delay does not itself satisfy the requirements of a fraud on the court. In fact, in the FISA case, where again there were misrepresentations but the court found them not sufficient to rise to the level of the fraud on the court, there was also delay resulting from them and the court said, but that's not sufficient. There's a difference between delay and false continuation, though, is there not? That is, you asserted, your client asserted an entirely new claim. Okay, we lose, but we realize we can do reformation. Well, again, there are lesser sanctions than fraud on the court and delay, again, what fraud on the court requires as the Eighth Circuit has repeatedly held is something that strikes at the heart of the judicial system and prevents the opposing party from fairly presenting its case and abuses the judiciary and this is what we have here is a disputed factual, with respect to the factual representations, a disputed factual disagreement regarding what the evidence shows where a finder of fact could have gone either way. That can't possibly be a basis for the nuclear bomb of fraud on the court sanctions or else every time litigants go up and litigate disputed issues, they run the risk that the judge is going to take it away from the finder of fact, rule on a sanctions motion and decide he believes one side or the other and then hold the other guilty of fraud on the court because he didn't believe their evidence. That can't be right. Mr. Huggie, you wanted to save five minutes, I'll give you your full five minutes, but before you go, let me comment, excuse me, that you said the advice concerning the interpretation of the contract was from scientists, not lawyers. I see at JA10, email between Pioneer's in-house attorneys. What is our current advice to R&D? Current, they can stack but no commercial rights because of a field of use limitation? Yes. That was between lawyers. Your Honor, I'm sorry. I was referring, you had asked me a question about the email on March 26th and that was the email during the contemporaneous negotiations, the only one that expressed any concern about the license field and the following day and the day after that, the lawyers explained to Dr. M that the deal now was, as consistent with the letter of intent, we have the right to stack glyphosate on glyphosate. I'd be happy to address those, but the point about the later emails, Your Honor, is that those emails in 2007 and 2008 explicitly state that we do have the right to stack. The question, what's questionable and is debated, is whether there's also the right to commercialize. Commercialize. Presumably that was the issue. I mean, that's what infringes patents. There was no commercialization here. The patent claim was that by doing the research, they violated the patent. We'll give you your time back. This is a complicated case and if Mr. Waxman needs a little more time, he can have it. May it please the Court. I think I'll start where my friend left off and underscore for the Court that in evaluating DuPont's assertions here, it's critical to keep in mind both the breadth of the representations that DuPont made about its subjective beliefs, which is what it was sanctioned for, and equally important, the reasons why it needed to make those broad assertions. Once the district court in the motion for judgment on the pleadings interpreted the contract to restrict DuPont from stacking OGAT onto Roundup Ready, the only way that DuPont could justify its admitted creation of an OGAT Roundup Ready stack, commercial product, they called it, was to argue that the agreement should be reformed, in other words, that a highly negotiated written agreement should be rewritten. And the judge evaluated the sanctions in this case in light of the extraordinarily high standard to achieve reformation of a negotiated written contract, which is, I believe, the highest standard existed in the civil law. The 8th Circuit law? This would be Delaware law, which would govern. And in order to establish reformation, which the 8th Circuit has underscored, which the Delaware court has underscored repeatedly, is extraordinarily difficult. The court says that it is, and I'm quoting from the Seminole case, the delightfully named Hobnob Tea Room decision of 1952, that it is the movement's, quote, burden to prove by evidence in every respect clear and convincing and free from doubt two things. One, that before executing the contract, the parties, quote, came to a prior specific understanding that differed materially from the written agreement, and two, that the movement mistakenly believed that the final executed written agreement accurately expressed that prior understanding. It was that hurdle that DuPont had to surmount in order to be able to justify what it had already done, which is to create an OGAT roundup ready commercial product. And when it sought to amend its complaint to reinstate its reformation defense and counterclaims and to add the extravagantly detailed and sweeping factual assertions that form the basis for the sanction, the trial judge said, I'm going to let you do that, but you do understand what a high hurdle you have in this case. And the factual allegations about DuPont's subjective belief that were made in the counterclaims, in the briefing, in oral arguments in front of the judge, in the presence of the judge, were that DuPont at all relevant times did not believe that the licensed field provision, which is 2.09, as Judge Lurie pointed out, which is itself incorporated in the license grant of 3.01A and the definition of biological materials. Okay, so assuming, I understand your argument, so let's assume, I'm going to pose the same question here, assume that we do find that misrepresentations were made. In this case, do those misrepresentations rise to the fraud of the court, and if so, why? I mean, these were, the answer is yes, these were specific, false, repeated representations about facts made to the court in addition to Monsanto in litigation that, I mean, this was, if you go through, you know, it's difficult to go through the docket entries here, but this period of litigation from the time they decided to pursue reformation until they were sanctioned yield a bewildering number of motions to compel, motions for sanction. The district court repeatedly had to intervene and direct their witnesses to answer questions about this, direct them to produce these documents, and if I could, oh, I'm sorry, Judge Lurie, I do want to get back. Am I correct in my read that the case could not have gone forward at the point without the reformation argument that it was over? It wasn't technical. For all intents and purposes, it was over. Technically, it wasn't over. The chronology was the complaint is filed, there is a motion for judgment on the pleadings on DuPont's contract defense, that we are licensed to do this, we're licensed to make this commercial product. The judge issues a written ruling saying no. DuPont then, this is also, this is a complaint both for contract breach and patent infringement. DuPont then does two things. First, it asks for reconsideration of that decision, and second, it seeks leave to amend its complaint to pursue the reformation claim. As to the former, after the judge issued the sanctions, and unlike the sanctions that we requested, he limited the sanctions just to the reformation claims and just to, for attorney's fees, which is what's at issue here, just for the period and work that was done with respect to reformation. He didn't strike their other contract defenses, he didn't, or anything like that. So after the sanctions are issued, he proceeds to adjudicate their request for reconsideration. And apropos of my friend's representation that the judge was sanctioning them for legal arguments or objective statements, they, in the course of the reformation briefing, they said to the judge, now look, and this is on page 34 of our brief, and page JA23739, they said all that was at issue in the reformation matter were our subjective beliefs and our misrepresentations about our subjective beliefs. Nothing about our legal arguments, nothing about the objective facts. And the judge agreed with that, and he underscored that understanding again at JA33962, which we quote at page 48 of our brief. What about Mr. Hunger's comment that biological materials includes mutants or variants, and therefore the contractual point isn't as tight? First of all, the contractual issues are not at issue here, though the judge specifically found to the contrary, and the reason he found to the contrary was he found, as he recited, that their 30B6 witness conceded that in this commercial product there were genetic materials from the transformation event, specifically transgenes. They conceded, and on that basis, he found that these materials were, in fact, biological materials. Now, the merits of his contract interpretation have been settled. They are resolved. They are not what's at issue in this case. But don't they relate to DuPont's, the quality of DuPont's representations and whether they are misrepresentations, the contracts? No, they actually don't. I mean, because what the judge was careful to say right at the outset, I think on the second paragraph of his opinion, he says, you know, DuPont keeps trying to argue contract interpretation or its understanding of the law. But I'm not going to be misled by this. I want everybody to understand that this is a case about whether they falsely misrepresented their subjective beliefs. Now, there was no discussion in this email chain that Mr. Hunger discussed with Judge Lurie about biological materials. But I do think, I do want to address this issue of selectable markers before I finally, hopefully, get back to Judge Reyna's question about why this is a fraud on the court. You can go through chronologically. It does take some work, given the structure of the Joint Appendix, to go through chronologically the cited emails. And you will not find any contemporaneous emails or other materials or representations by anybody at this time, whether they are, we have the relevant parties are Dr. M, who signed the agreement, Mr. C, who was also a negotiator or a lawyer, and Mr. J, who was also a lawyer on the negotiating team. They repeatedly, as Your Honor suggests, there is a recognition that there are not commercial rights. We have not agreed, they have not agreed that we can stack like traits. And that was both on the very, and they identified 2.09 as the problem. And 2.09 remained in the document. And right after the document is signed, again, there is back and forth among the parties who participated in the negotiation and signing, as well as Pioneer and DuPont's senior management saying, you know, if we had commercial rights, we would have a great product. Check with Mr. C just did. We have no commercial rights. Over and over and over again. Now, they are pointing the court. Well, that's in 2008, though. Well, it was, there are documents that are in the March 26th to 29th period leading up to it that also distinguish between, quote, selectable markers and commercial product and stacking rights. But the 2007 emails, recall what happens is the document is signed. DuPont then goes through an intensive period of trying to produce this wonder product, which is, you know, OGAT, which they had in 2006 announced to the world, this is the Monsanto killer. This is better than Roundup. This is going to give you glyphosate tolerance, ALS tolerance, better yield. This is going to be on the market, you know, coming up. And in 2008, 2007, they discover the product doesn't work. And you can see in the emails that are referenced here, them scrambling for a way to figure out how to dig themselves out of this hole. And someone says, if we had commercial stacking rights, we could do this. Check with Mr. C just did. We don't have commercial rights. Now, what the documents in 2002 show is that two things were going on. First, they wanted to remove what Monsanto proposed in 301H as an absolute ban on stacking any other traits with the Monsanto event. Monsanto agreed that it would substitute in, in its place, a provision that says you can stack any trait you want that supplies non-glyphosate other than glyphosate tolerance, provided you can demonstrate to us that it doesn't affect glyphosate tolerance. The other thing they wanted was, they wanted the ability to use glyphosate, another glyphosate-tolerant trait as a, quote, selectable marker. And there is an obsessive concern, particularly by Dr. M, who's the chief geneticist and research scientist, about we have to be able to use our traits as selectable markers, as selectable markers. Selectable marker and a commercial product could not possibly be different. A selectable marker is a biological construct. It is the attachment of a particular gene that can be easily detected attached to a, quote, gene of interest, something that the researcher would like to inject into a cell. You then transform it into a cell, you know, you drop some dye or something and see whether the selectable marker is there, and that gives you the confidence, based on some cells in a petri dish, that cell transformation had occurred. It has nothing whatsoever to do with a commercial stacked product. Indeed, using OGAT as a selectable marker, by definition, means that some other gene is the gene of interest, not OGAT. And why on earth? This is, recall, this is a time in which they've developed OGAT. They haven't yet announced it to the world, but this is their miracle. This is how they're going to leapfrog Monsanto in this area. The notion that they wanted to have the ability to stack it onto another glyphosate-resistant trait and thereby, in perpetuity, be able to continue to keep paying Monsanto royalties for their own miracle product is crazy. So the injection in the court in this proceeding, because there was no argument whatsoever before the district judge, that somehow the select, their belief that they had achieved the ability to use this as a research mode in a petri dish allowed them to make a commercially stacked product, is an invention of the court of appeals litigation, and it doesn't compute. And in fact, really, if you look at just the 2002 emails and look at the attention paid and the importance paid to getting the ability to use it as a selectable marker, it shows that they surely knew that they didn't have the right to use it as they told the court in their reformation claims. They always believed they had the right to use it for all purposes. I see I have six seconds left, so let me get to the fraud on the court. Well, I'm giving Mr. Hunger a little extra time so you can have a couple of minutes. Fraud on the court. The district judge found, with respect to each of the five categories of misstatements, and in the section of his opinion where he awards attorney's fees, that the conduct was an abuse of the judicial process. An abuse of the judicial process under Chambers versus NASCO and Wilhite in the Eighth Circuit is the standard for application or the award of attorney's fees, which is what is at issue in the case. Now, the court also said that this was a fraud upon the court, and it said it repeatedly, but it clearly understood that it was using fraud on the court and abuse of the judicial process essentially as equivalent. Now, fraud on the court is a word that can either mean this super high fraud on the court, meaning that this court addressed in, I believe it was Broyhill, and that is addressed in the Pfizer case where the sanction was a declaration that a patent was unenforceable, which as this court pointed out in Therosense is the atomic bomb of patent law. Pfizer cited the Nichols case, and in the Nichols case, the fraud on the court was tangible. I mean, you can look at the hook and see that this is a homemade hook. Attorney arguments were not involved in that case. And neither are they here, Your Honor. Both here, I'll quote Nichols, what was involved in Nichols was a, quote, knowing misrepresentation of the facts underlying a claim. That's exactly what the district judge properly found was done here. And the words fraud on the court as just about every treatise writer and commentator and court recognizes  We quoted Wright and Miller for the proposition that, quote, Any fraud connected with the presentation of a case to a court is fraud upon the court in the broad sense. And whatever talismanic significance may or may not attach to those words, the Supreme Court of the United States in Chambers and in Roadway Express and the Eighth Circuit in Wilhite and Peerless and a number of other cases that aren't cited in the briefs made clear that this is, as a matter of law, the standard for applying attorney's fees as a sanction is, quote, bad faith abuse of the judicial process. And this court's review of the We, a court can impose sanctions and issue or award attorney's fees under Rule 11 or under its own general power. When we're talking about fraud on the court, though, are we talking about does this rise to the level of bribery of a judge or what we had in the Nichols case? I mean, the problem here is that if we find fraud on the court, we don't want to do it in a way that hobbles counsel from making arguments. I mean, counsel's required to be zealous in the representation. I certainly endorse that. So we need to be careful to intrude into that area. And that's what I'm going at here. I'm really talking about a fraud on the court. Your opponent is saying we were just making arguments. As good counsel, we're making arguments. The home company may disagree with us, but we're advancing what we think are good, founded arguments. The district judge could not have been clearer in his opinion and in his subsequent opinions in reaction to DuPont's own advocacy that what was at issue in the case and what they were being sanctioned for were not arguments about the law, arguments about whether other merits or any objective statement. They were misrepresentations of I might as well just quote the court at page JA48. They were statements of the factual existence of beliefs. Exactly. I'm quoting from the judge's opinion. During the hearing, defendants spent much of their time presenting their case for contract reformation. Irrespective of defendants' efforts to turn this motion into an adjudication on the merits, the court keeps returning to the true issue of this motion. Did the defendants perpetuate a fraud against the court by making knowing, factual misrepresentations to the court? Exactly what happened in Nichols. And again, where he applies the attorney's fees section, which is what is at issue in this appeal, and again, which whatever the Eighth Circuit, you might think Nichols says, and Nichols has not, the sole case citing Nichols in the Eighth Circuit after it doesn't recite this standard. The standard is the chamber's standard of abuse of the judicial process. If you look at pages 76, 77, and 78 of the joint appendix, which is the section of the brief that assesses attorney's fees to be paid, I'm reading at the carryover sentence on 77 and 78, defendants have made a mockery of this proceeding and delayed this litigation by their insistence, and these are the relevant words, Judge Rayna, that they believed that they had a right to stack and commercialize Roundup Ready and OGAD. They have repeatedly made false misrepresentations to the court and these misrepresentations have compromised the integrity of the case and abused the judicial process. That is the basis for the award of attorney. Thank you, Mr. Waxman. I think we have your position. Thank you. Mr. Funga will give you your full rebuttal time back. Thank you, Your Honor. Several points. First of all, none of the cases that Mr. Waxman is relying on involve disputed factual disputes about the accuracy of the representations. Those are cases like the case that Your Honor referred to in the Nichols case. It was undisputed that false statements had been made and that's a far cry from a case where the evidence supports, maybe not all the evidence, but where the evidence supports the allegedly false representations. Lawyers are allowed and parties are allowed to litigate where there's evidence on both sides of the issue and if you uphold spot on the court sanctions in a case where there is evidence on both sides of the issue, you're giving a green light to district judges to take issues away from the fact finder and impose sanctions summarily in a sanctions hearing. That can't possibly be fraud on the court. And counsel argues that there were no sanctions imposed for objective legal argumentation. I urge the court to look again, not at the district court's characterizations of the representations, but at the actual representations. For example, on pages 49 and 50 of the joint appendix, where this is Part 3A of the court's opinion and similarly Part 3E of the court's opinion at 64, the court is quoting, not from factual assertions, from arguments in DuPont's brief on the motion for judgment on the pleadings. These are legal arguments about the legal significance to be accorded to the pleadings and the party's agreement, the terms of the Roundup Ready license. Is there a difference between making misrepresentations in the context of a legal argument and making factual misrepresentations in your pleading? Well, certainly there's a difference. Again, Your Honor, these are arguments about what the Roundup Ready licenses authorize. In a motion on the law, a motion for judgment on the pleadings, those are by definition legal argumentations. But of course, it's not possible, I submit. The reformation claim is based on the subjective belief that Monsanto had. Yes, Your Honor, that's absolutely right. But my point is two of the five categories of representations that the court relied on were not about subjective belief. The statements that he actually quotes as being fraudulent are legal argumentations about what the law is, what the party's agreement on its face is. That can't be sanctionable. With respect to the factual representations, the point there is there is evidence supporting, both in 2002 and in 2007 and 2008, the assertion that DuPont believed it had, that Pioneer believed it had these stacking rights. I went through the evidence in 2002. Closing to cite a case and you knowingly omit that it has been reversed by a higher court in a legal argument, is that a factual misrepresentation or a legal misrepresentation? I don't know whether it's factual or legal, but it's certainly not fraud on the court, Your Honor, because that is not something that is susceptible of preventing the opposing party from fairly presenting its case because that's a matter of public record. Just a matter of bad lawyering. Certainly, it may be sanctionable on any number of different grounds, but it's not fraud on the court. It doesn't rise to that level. And here, again, we submit we have less than that because the actual contemporaneous... Mr. Waxman didn't even address the three pages of the joint appendix that I urged the court to look at, which quite clearly say that the parties at the time believed, maybe wrongly, maybe not, but they believed at the time. Mr. C and Dr. M, the very people that he is referring to, believed, oh, good news about the GATT. We've got the rights we wanted for the GATT. He talks about selectable markers. The fact is, and this is undisputed, to use a selectable marker, you're stacking. They couldn't get the rights they thought they had gotten unless they had the stacking rights and also the commercialization rights because they believed that there was no way at the time that they couldn't be sure they could get the gene, the herbicide-resistant gene, out of the product. Are you familiar with a case in this court called Precision Specialty Metals, a sanctions case? I'm not sure that I remember. If the court has no further questions, we ask that the judgment of the district court be reversed to avoid doing legal advocacy and candid advice to clients. Thank you, Mr. Hunger. The case will be taken on revising.